UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARILYN THOMPSON,                         Case No. 1:09-cv-122

    Plaintiff,                         Dlott, J.
                                       Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. at 13-25) (ALJ's decision)).

**I.**

Plaintiff filed an application for DIB on August 15, 2005, alleging a disability onset date of August 5, 2005, due to nerve damage and Meniere's disease. (Tr. 84-87). Her application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which plaintiff was represented by counsel, was held on July 14, 2008. (Tr. 444-507). Hershel Goren testified as a medical expert and Vanessa Harries testified as a vocational expert.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On November 4, 2008, the ALJ entered his decision denying Plaintiff's claim. That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on December 17, 2008. (Tr. 5-7.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant last met the insured status requirements at the Social Security Act on December 31, 2007.

2. The claimant did not engage is substantial gainful activity during the period from her alleged onset date of August 5, 2005 through her date last insured of December 31, 2007.

3. Through the date last injured, the claimant had the following severe impairments: history of carpal tunnel syndrome; obesity; a history of vertigo; mild right-sided Ménière's disease, less than consistent diagnosis; and asthma.

4. Through the date last injured, the claimant did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P Appendix 1.

5. After careful consideration the entire record, the undersigned finds that, through the date last injured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404, 1567 © except that she could not climb ladders, ropes, or scaffolds; could not tolerate exposure to hazards, such as unprotected heights and dangerous maneuvering machinery; could not tolerate exposure to loud noises, as such exposure to loud noises is defined in DOT terms; could not tolerate exposure to concentrated extremes of obnoxious odors, fumes, gases, dust, or poor ventilation; should not have been required to satisfy production quota, strict time standards, or fast paced; and was limited to occasional fine or intense fingering or feeling, such as keyboarding.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on September 25, 1953 and was 54 years old which

is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transfer ability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as the framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 5, 2005, the alleged onset date, through December 31, 2007, the date last insured.

(Tr. 15-25).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB

On appeal, Plaintiff maintains that: (1) the ALJ erred in failing to find that Plaintiff's headaches were a severe impairment; (2) the ALJ erred in failing to give controlling weight to the opinions of Plaintiff's treating physicians; and (3) the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden

4

of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

Plaintiff argues first that the ALJ erred in failing to find that her headaches were a severe impairment. Plaintiff's assertion is unavailing.

An impairment (or combination of impairments) is "severe" for purposes of Step 2 if it significantly limits a plaintiff's physical or mental ability to do basic work activities. *See Burton v. Apfel*, No. 98-4198, 2000 WL 125853, at *3 (6th Cir. Jan. 24, 2000); *see also* 20 C.F.R. §§404.1520(c) (DIB), 416.920(c) (SSI). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§404.1521(b)(1) (DIB), 416.921(b)(1) (SSI). In the mental context, this means a significant limitation upon a plaintiff's ability to understand, carry out, and remember simple instructions; use judgment; respond

appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. *Id.* §§404.1521(b)(3)-(b)(6) (DIB), 416.921(b)(3)-(b)(6) (SSI). The burden of proving that an impairment is "severe" rests with the plaintiff, not with the Commissioner. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Here, the ALJ acknowledged Plaintiff's allegations that she suffers from headaches, yet found that the headaches are not severe within the meaning of the Social Security Act as they are the direct result of medication overuse. (Tr. 16). The ALJ further noted that an MRI of Plaintiff's brain was normal, and Dr. Goren, the medical expert, testified that Plaintiff's alleged headaches were the direct result of medication overuse. (*Id.*)

At the outset, as noted by the Commissioner, under the Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps. 20 C.F.R. § 404.1545(e). Because the ALJ found several of Plaintiff's other impairments were severe at step two, Plaintiff's claim proceeded to steps three to five, at which point the ALJ was required to consider both severe and non-severe impairments. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Thus, the Commissioner asserts that whether the ALJ reasonably found that Plaintiff's headaches were not severe at step two is "legally irrelevant." *See McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citations omitted).

In any event, the undersigned finds that the ALJ's findings with respect to

Plaintiff's alleged headaches is supported by substantial evidence. In April 2007, Plaintiff presented at the emergency room to be evaluated for possible stroke because she was slurring her speech. (Tr. 291-94, 253). The attending physician concluded that Plaintiff's differential diagnosis included "first and foremost an over medication syndrome," and second, cerebrovascular accident. (Tr. 293-94). Furthermore, Dr. Snider reported normal testing results and subsequently treated Plaintiff for a migraine variant and commented they would try and minimize the narcotics Plaintiff used. (Tr. 310-11).

Accordingly, the ALJ did not err in relying on Dr. Goren's well-supported opinion that Plaintiff's headaches resulted from medication overuse. (Tr. 16, 474-75). The undersigned therefore agrees with the Commissioner, and finds that the ALJ properly evaluated Plaintiff's subjective complaints about her impairments in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

### B.

For her next assignment of error, Plaintiff maintains that the ALJ erred in failing to give deference to the opinion of Plaintiff's treating physicians. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion.

*Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

A. *Dr. Paley*

Plaintiff argues first that the ALJ erred in failing to give controlling weight to the opinion of Dr. Paley, Plaintiff's orthopedist. On January 24, 2006, Dr. Paley wrote a letter to Plaintiff's counsel in which he opined that Plaintiff was "a good candidate for disability based on her level of education, her age, and the fact that she has these bilateral upper extremity infirmaries." (Tr. 221). He opined that Plaintiff's symptoms had become consistent with chronic pain syndrome which he felt would require medications that were beyond the scope of his practice and that only a pain specialist could provide. (Tr. 221). He wrote that he felt Plaintiff would require long-term use of medications that "may cloud her judgment" or make her drowsy. (Tr. 221). Dr. Paley also completed an RFC questionnaire in which he checked boxes to indicate that Plaintiff could lift/carry less than

five pounds and had a limited ability to reach, handle, push, or pull because she had bilateral elbow surgery and chronic pain with loss of motion and weakness. (216-17, 375-77). The form did not indicate limitations on sitting, standing, or walking. (Tr. 216).

However, as noted by the ALJ, although Dr. Paley found that Plaintiff could lift less than five pounds, such a finding is not supported by "objective or other clinical findings beyond the [Plaintiff's] subjective report of slight decrease in pinprick and light touch sensation." (Tr. 22) Moreover, as noted by the Commissioner, Dr. Paley saw Plaintiff only two times after the alleged disability onset date; his notes were devoid of any clinical findings; and his attempt to refer Plaintiff to a specialist went unheeded. (Tr. 222-23).

Accordingly, the ALJ reasonably declined to grant controlling weight or even substantial deference to Dr. Paley's opinion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

B.   Dr. Turner

On April 9, 2008, "Dr. Turner/E. Ryan, RN" signed an RFC questionnaire. (Tr. 355-59). As noted by the Commissioner, the questionnaire appears to have been completed by Nurse Ryan. (Tr. 358-59). "Dr. Turner" diagnosed dizziness and Meniere's syndrome. (Tr. 355). He opined that Plaintiff could only sit for two hours and stand/walk for two hours in a workday because she needed bed rest. (Tr. 356). However, he wrote that he could not provide an answer to the question asking how long

9

Plaintiff could sit and stand continuously because it would depend on her symptoms at the time. (Tr. 356). He opined Plaintiff needed to take unscheduled breaks as often and as long as needed and would likely be absent from work daily. (Tr. 357-58).

The ALJ failed to credit Dr. Turner's opinion, finding that his functional limitations were not demonstrated by the documented evidence and were speculative. (Tr. 23). The ALJ also noted that Dr. Turner had previously described Plaintiff's clinical abnormalities as "mild:" he appeared to premise his finding of extreme limitations on Plaintiff's subjective complaints rather than objective medical evidence; and Dr. Turner's finding of extreme limitations conflicted with the opinion offered by Dr. Goren. (Tr. 23).

Furthermore, although Dr. Turner described Plaintiff as having Meniere's disease, the ALJ found that Dr. Turner's diagnosis was not supported by objective and clinical testing and adopted the opinion Dr. Goren, the medical expert, who believed that the medical testing did not support a diagnosis of Meniere's disease. Plaintiff argues this was error, asserting that although she does not have a classical presentation of Meniere's disease, she has been treated for years for a variant presentation of the disease.

However, as noted above, mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley*, 820 F.2d at 780. More importantly, the ALJ did not completely reject Plaintiff's symptoms. Instead, the ALJ concluded that regardless of the name of Plaintiff's impairment, whether it was called vertigo or Meniere's disease, Plaintiff was still restricted from hazards, loud noises, and the significant stressors of production quotas and strict time standards. (Tr. 20-21). The ALJ expressly premised these limitations on the expert opinion offered by Dr. Goren at the

administrative hearing. (Tr. 20- 21).

Accordingly, the undersigned finds that the ALJ did not err in weighing the opinion of Dr. Turner.

*C.     Dr. Avera*

On June 20, 2007, Dr. Avera, Plaintiff's family physician, opined that Plaintiff could sit four hours and stand/walk less than two hours total in a workday, and she could occasionally lift/carry ten pounds or less, but never twenty pounds or more. (Tr. 329-30). She opined Plaintiff could never perform postural activities because changes in position aggravated her Meniere's disease. (Tr. 332). She opined Plaintiff needed to take unscheduled 30-minute breaks during the workday every 30 minutes and would need to miss work more than three times a month. (Tr. 330-31).

However, Dr. Avera's treatment notes are devoid of clinical findings and objective test results and are remarkable only for Plaintiff's subjective complaints. As noted above, an opinion is entitled to controlling weight only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *See Giddings,* 480 F.2d at 656.

Thus, the ALJ considered the medical evidence and treatment history and properly found that they did not support a finding of disability. Furthermore, the ALJ clearly articulated his reasoning for the weight assigned to the opinions of Drs. Paley, Turner and Avera, and the undersigned finds that the ALJ's decision to give little weight to their findings is supported by substantial evidence.

11

**C.**

For her final assignment of error, Plaintiff maintains that the ALJ erred in evaluating her pain, credibility, and subjective complaints. Plaintiff asserts, *inter alia*, that the ALJ erred in failing to find her disabled based on her arm pain, vertigo, severe headaches and nausea. Plaintiff further asserts that the ALJ improperly relied on her daily activities in his credibility assessment. Plaintiff's assertions are unavailing.

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff - to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with

the duty of observing a witness's demeanor and credibility").

Here, the ALJ noted that despite Plaintiff's claims of disabling symptoms, there is no evidence of consistent loss of neurological function and objective testing reveals that Plaintiff's condition has improved. (Tr. 22). The ALJ further found that objective testing demonstrates no electrodiagnostic abnormalcies of her upper extremities. (*Id.*) (citing Tr. 230; Dr. Paley's normal left and right ulnar condition study, and finding of no evidence of left and right ulnar neuropathy of the elbow.)

Moreover, Dr. Goren testified that audiograms after the alleged disability onset date of August 5, 2005 showed Plaintiff's hearing improved, and thus the Plaintiff's subjective complaints are inconsistent with the evidence of record. (Tr. 484-88). Thus, Dr. Goren's testimony that Plaintiff's audiograms showed improvement contradicts Plaintiff's testimony that her Meniere's disease condition had gotten worse since August 5, 2005, and that it was harder for her to hear. (Tr. 459). *See* SSR 96-7p (over time laboratory findings demonstrating improvement of underlying condition may help draw inferences about credibility).

Furthermore, in November 2006, Plaintiff underwent an MRI which was negative, as well as multiple ENGs showing only mild right-sided vestibular weakness, and audiograms showed only mild right-sided hearing loss. (Tr. 237). The exam performed that day was entirely normal, except Plaintiff had marked difficulty with tandem Romberg and some difficulty on normal gait, but her arm and leg strength was normal and there was no nystagmus. (*Id.*)

13

The ALJ also found that Plaintiff has been managed conservatively following her surgeries and "treatment notes demonstrate that she receives significantly more pain relief than she reported at the hearing." (*Id.*)

Finally, the ALJ properly considered that Plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date: January 29, 2010  s/Timothy S. Black
 Timothy S. Black
 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | |
|---|---|
| MARILYN THOMPSON, | Case No. 1:09-cv-122 |
| Plaintiff, | Dlott, J.<br>Black, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).